IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 71059-1-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL ANDREW HECHT, | ) | PUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: February 18, 2014 |
| | ) | |

VERELLEN, J. — A prosecutor improperly appeals to the passion and prejudice of a jury by using graphics in closing argument that show the defendant's face with the word "GUILTY" superimposed in red.[1] Michael Hecht was convicted of felony harassment and patronizing a prostitute. During closing argument, the prosecutor used multiple slides showing Hecht's photograph with a large red "GUILTY" superimposed over his face. There is no legitimate purpose for such images in a criminal trial. Such misconduct was flagrant and ill-intentioned, and the prejudicial impact could not have been cured by a jury instruction. We reverse and remand for a new trial.

## FACTS

In 2008, Hecht was elected to a superior court judge position for Pierce County, defeating incumbent Judge Sergio Armijo. During the campaign, shopkeeper Albert Milliken told Armijo's son Morgan that Hecht patronized Tacoma street prostitutes. Milliken suspected Hecht patronized Joseph Pfeiffer. Milliken talked to Pfeiffer, then

---

[1] In re Pers. Restraint of Glasmann, 175 Wn.2d 696, 707-10, 286 P.3d 673 (2012).

provided Morgan's telephone number to Pfeiffer and Pfeiffer's to Morgan. Morgan contacted Pfeiffer, investigated the rumors surrounding Hecht, and reported his findings to police. Pfeiffer notified Hecht about these exchanges.[2]

Pfeiffer also told Hecht that he suspected Joey Hesketh had spoken about Hecht patronizing prostitutes. Hecht and Pfeiffer found Hesketh and Michael Mundorff walking in an alley. Hecht drove his car quickly toward the two men, stopping inches from Hesketh. Hecht told Hesketh, "You better not be talking about me. If I find out you are talking about me, I am going to kill you."[3] Hesketh took the threat seriously.

Following the Tacoma Police Department's investigation of the allegations, the State charged Hecht with one count of felony harassment pursuant to RCW 9A.46.020 and one count of patronizing a prostitute pursuant to RCW 9A.88.110.

The case was tried to a jury. At trial, Hesketh and Mundorff testified that Hecht threatened to kill Hesketh. Pfeiffer testified that Hecht had not threatened Hesketh. Pfeiffer, Hesketh, John Marx, and Edward Smith testified about multiple instances when Hecht picked them up in downtown Tacoma, took them to his law office for sex, and then paid them.

Hecht testified that he occasionally picked up transients to give them work in his office or on his campaign. He denied paying anyone for sex. Hecht acknowledged that he knew Pfeiffer and occasionally gave him money or clothing. Hecht acknowledged that he met Hesketh in August of 2008, but denied threatening him. Hecht testified that he had never seen Marx or Smith.

---

[2] Detective Bradley Graham recovered telephone records showing calls between Hecht and Pfeiffer between August 2008 and January 2009.

[3] Report of Proceedings (Oct. 15, 2009) at 693.

In closing argument, the prosecutor employed a slideshow showing images of trial evidence, quotes from witnesses at trial, and titles and commentary reflecting the prosecutor's argument. Slide 85 was titled "PATRONIZING A PROSTITUTE" and shows Hecht's driver's license photo next to a booking photo of Pfeiffer.[4] The word "GUILTY" appears in red, diagonally across Hecht's face. Slide 65, titled "COUNT I – HARASSMENT" shows Hecht's license photo next to a booking photo of Hesketh.[5] Again, the word "GUILTY" appears in red, diagonally across Hecht's face. Slide 84 bore the title "DEFENDANT'S CREDIBILITY," asked "If he's not truthful about the little things . . . [w]hy should you believe him when he denies the big things?" and answered "YOU SHOULDN'T."[6]

The jury convicted Hecht on both counts. The trial court imposed community service in lieu of jail time for the harassment conviction, and suspended the sentence for the solicitation conviction.

Hecht appeals.

## ANALYSIS

Hecht first contends that the prosecutor's use of slides in closing argument showing the word "GUILTY" superimposed over a photograph of Hecht's face violated his right to a fair trial. We agree, and reverse his convictions.

---

[4] Clerk's Papers at 526. Division Two of this court granted appellant's motion to supplement the record with the slides used during the State's closing argument, finding they were "visual adjuncts to the verbatim report of closing arguments," not additional evidence. Clerk's Papers at 440.

[5] Clerk's Papers at 506.

[6] Clerk's Papers at 525.

3

The right to a fair trial is a fundamental liberty secured by the Sixth and Fourteenth Amendments to the United States Constitution and article I, section 22 of the Washington State Constitution.[7] "'A "[f]air trial" certainly implies a trial in which the attorney representing the state does not throw the prestige of his public office . . . and the expression of his own belief of guilt into the scales against the accused.'"[8] A prosecutor may make use of graphics in closing argument to highlight relevant evidence and generally has wide latitude to argue reasonable inferences from the evidence, but prosecutorial misconduct may deprive a defendant of his constitutional right to a fair trial.[9]

To prevail on a claim of prosecutorial misconduct, a defendant must show that the prosecutor's conduct was both improper and prejudicial.[10] To show prejudice, a defendant must demonstrate a substantial likelihood that the misconduct affected the jury verdict.[11] Because Hecht failed to object at trial to the argument and graphics, he is required to establish that the misconduct was so flagrant and ill-intentioned that it caused an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury.[12]

In In re Personal Restraint of Glasmann, our Supreme Court recently addressed a claim of prosecutorial misconduct based on similar slides used in closing argument:

> At least five slides featured Glasmann's booking photograph and a caption. In one slide, the booking photo appeared above the caption, "DO

---

[7] Glasmann, 175 Wn.2d at 703.

[8] Id. at 704 (alterations in original) (internal quotation marks omitted) (quoting State v. Monday, 171 Wn.2d 667, 677, 257 P.3d 551 (2011)).

[9] Id. at 703-04.

[10] Id. at 704.

[11] Id.

[12] Id.

YOU BELIEVE HIM?" In another booking photo slide the caption read, "WHY SHOULD YOU BELIEVE ANYTHING HE SAYS ABOUT THE ASSAULT?" Near the end of the presentation, the booking photo appeared three more times: first with the word "GUILTY" superimposed diagonally in red letters across Glasmann's battered face. In the second slide the word "GUILTY" was superimposed in red letters again in the opposite direction, forming an "X" shape across Glasmann's face. In the third slide, the word "GUILTY," again in red letters, was superimposed horizontally over the previously superimposed words.[13]

The court reversed Glasmann's convictions, finding that the prosecutor's slides and argument were flagrant and ill-intentioned misconduct. The court noted:

> Our courts have repeatedly and unequivocally denounced the type of conduct that occurred in this case. [W]e have held that it is error to submit evidence to the jury that has not been admitted at trial. The "long-standing rule" is that "consideration of any material by a jury not properly admitted as evidence vitiates a verdict when there is a reasonable ground to believe that the defendant may have been prejudiced."

> . . . .

> Here, the prosecutor intentionally presented the jury with copies of Glasmann's booking photograph altered by the addition of phrases calculated to influence the jury's assessment of Glasmann's guilt and veracity. . . . There certainly was no photograph in evidence that asked "DO YOU BELIEVE HIM?" There was nothing that said, "WHY SHOULD YOU BELIEVE ANYTHING HE SAYS ABOUT THE ASSAULT?" And there were no sequence of photographs in evidence with "GUILTY" on the face or "GUILTY, GUILTY, GUILTY." Yet this "evidence" was made a part of the trial by the prosecutor during closing argument.[14]

The Supreme Court also stressed that existing case law and professional standards for prosecutors preclude the expression of personal opinions of the defendant's guilt and "clearly warned against" such use of the slides in closing argument.[15] The court emphasized that a prosecutor has the duty to "'seek convictions

---

[13] 175 Wn.2d 696, 701-02, 286 P.3d 673 (2012) (citations omitted).

[14] Id. at 704-06 (citations omitted) (internal quotation marks omitted) (quoting State v. Pete, 152 Wn.2d 546, 555 n.4, 98 P.3d 803 (2004)).

[15] Id. at 707.

based only on probative evidence and sound reason.'"[16] Consistent with this duty, a prosecutor "'should not use arguments calculated to inflame the passions or prejudices of the jury.'"[17] The court concluded that the pervasive misconduct could not be cured by an instruction.

The slides of Hecht's photograph with a large red "GUILTY" printed across his face were at odds with the prosecutor's duty to ensure a fair trial. No legitimate purpose is served by a prosecutor showing the jury a defendant's photograph with the word "GUILTY" superimposed over his face. Such images are the graphic equivalent of shouting "GUILTY."[18] "A prosecutor could never shout in closing argument that '[the defendant] is guilty, guilty, guilty!' and it would be highly prejudicial to do so."[19]

The prosecutor argues that the driver's license photo of Hecht was not equivalent to the booking photo of Glasmann's battered face. But the prosecutor's graphics, though arguably less severe than those at issue in <u>Glasmann</u>, were clearly improper.

Moreover, the prejudicial impact of the word "GUILTY" was magnified by the fact it was written in capital letters, in red, and on a diagonal, obvious graphic devices for drawing the eye, implying urgency of action, and evoking emotion.[20] This manipulation unfairly injected inflammatory extrinsic considerations into the argument.

---

[16] <u>Id.</u> at 704 (quoting <u>State v. Casteneda-Perez</u>, 61 Wn. App. 354, 363, 810 P.2d 74 (1991)).

[17] <u>Id.</u> (quoting AMERICAN BAR ASSOCIATION, STANDARDS FOR CRIMINAL JUSTICE std. 3-5.8(c) (2d ed. 1980)).

[18] <u>Id.</u> at 709-10 ("The prosecutor's improper visual 'shouts' of GUILTY urged the jury to find Glasmann guilty as charged.").

[19] <u>Id.</u> at 709.

[20] <u>See id.</u>

Individuals retain and process information in different ways.[21] Graphics can be a legitimate tool to summarize detailed information or to highlight express quotes from the record. But as in Glasmann, the prosecutor presented images implying his opinion that Hecht was guilty. And slide 84, which stated that "YOU SHOULDN'T [believe Hecht]" appears to state the prosecutor's personal opinion that Hecht lacked credibility. The significance of this slide in isolation is debatable; however, the cumulative impact of the "YOU SHOULDN'T" slide and the slides proclaiming Hecht "GUILTY" is substantial. Although the prosecutor's verbal argument was largely temperate, that does not diminish the dramatic impact of the improper graphics.

As in Glasmann, the use of the multiple slides "may well have affected the jurors' feelings about the need to strictly observe legal principles and the care it must take in determining [the defendant's] guilt."[22] The harassment charge against Hecht required the jury to assess Hecht's credibility and to weigh it against the credibility of Pfeiffer, Hesketh and Mundorff. Similarly, the prostitution charge required the jury to weigh the credibility of Hecht and Pfeiffer.

We conclude that the prosecutor's slides undermined Hecht's right to a fair trial by creating the substantial likelihood of a verdict improperly based on passion and prejudice. "The impact of such powerful but unquantifiable material on the jury is

---

[21] See id. at 708-09 ("'[V]isual arguments manipulate audiences by harnessing rapid unconscious or emotional reasoning processes and by exploiting the fact that we do not generally question the rapid conclusions we reach based on visually presented information.'" (alteration in original) (quoting Lucille A. Jewel, Through a Glass Darkly: Using Brain and Visual Rhetoric to Gain a Professional Perspective on Visual Advocacy, 19 S. CAL. INTERDISC. L.J. 237, 289 (2010))).

[22] Id. at 706.

exceedingly difficult to assess"[23] but, as in Glasmann, we conclude that the misconduct was so flagrant and ill-intentioned that it caused an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury. The prosecutor's misconduct necessitates reversal of both convictions and remand for a new trial.

None of the remaining issues raised by Hecht merit appellate relief. We address them because they may surface on retrial.

### ER 404(b) Evidence

Over objection, the trial court allowed the State to call Smith and Marx to testify about their sexual encounters with Hecht. The trial court ruled pretrial that Marx could testify that Hecht paid him for sex on 10 to 15 occasions between 2001 and 2002, and that Smith could testify about Hecht paying him for sex on multiple occasions. The court admitted the evidence under ER 404(b) as evidence of a common scheme or plan.[24]

Hecht contends that the trial court abused its discretion by allowing Smith and Marx to testify about his prior uncharged acts of soliciting prostitutes. His argument is not persuasive.

ER 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

---

[23] Id. at 712.

[24] The trial court admitted Hesketh's testimony to establish Hecht's motive and the reasonableness of Hesketh's fear Hecht would carry out his threat to kill. Hecht did not contest that Hesketh's testimony was admissible for these purposes.

To be admissible under ER 404(b) to demonstrate a common scheme or plan, the evidence must be "'(1) proved by a preponderance of the evidence, (2) admitted for the purpose of proving a common scheme or plan, (3) relevant to prove an element of the crime charged or to rebut a defense, and (4) more probative than prejudicial.'"[25] The evidence must reveal "that the person 'committed markedly similar acts of misconduct against similar victims under similar circumstances.'"[26] A trial court's ruling under ER 404(b) is reviewed for an abuse of discretion.[27]

The common scheme or plan rationale for admitting evidence frequently appears in sex offense cases involving a defendant's "grooming" behavior, and such cases are helpful here by analogy.[28] For example, in State v. DeVincentis,[29] our Supreme Court held that prior misconduct may be admissible to show a common scheme or plan where the prior crime and the present crime were committed in a similar way and under similar circumstances, without requiring proof of any overarching plan or any unusual techniques that might constitute the defendant's "signature" characteristic.

Here, the State demonstrated a common scheme or plan by providing evidence that Hecht committed markedly similar acts of misconduct under similar circumstances. The similarities between Smith's, Marx's, Hesketh's, and Pfeiffer's accounts are

---

[25] State v. DeVincentis, 150 Wn.2d 11, 17, 74 P.3d 119 (2003) (quoting State v. Lough, 125 Wn.2d 847, 852, 889 P.2d 487 (1995)).

[26] State v. Carleton, 82 Wn. App. 680, 683, 919 P.2d 128 (1996) (quoting Lough, 125 Wn.2d at 852).

[27] DeVincentis, 150 Wn.2d at 17.

[28] See 5 KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE: LAW AND PRACTICE § 404.20 n.13, at 541 (5th ed. 2007) (citing State v. Krause, 82 Wn. App. 688, 919 P.2d 123 (1996) (holding the key distinction under Rule 404(b) is between "evidence of a disposition," barred by the rule, and "evidence of a design," allowed by the rule)).

[29] 150 Wn.2d 11, 17, 74 P.3d 119 (2003).

abundant. Each witness described Hecht frequenting a specific area of downtown Tacoma where male prostitutes were known to meet customers. Each testified that Hecht would drive through the same small area in the late afternoon or early evening, several days a week, over years. Each testified that Hecht picked up individuals in this area on repeated occasions, drove them to his office, engaged in similar sex acts, drove them back to where he picked them up, and paid them in cash as he dropped them off. In addition, each testified that they were homeless and drug-addicted, relying on the cash from prostitution to buy drugs. The trial court's determination that these events were proved by a preponderance of the evidence is amply supported by the record.

The trial court's ruling to admit Smith's and Marx's testimony was based on tenable grounds and careful consideration of the evidence. Contrary to Hecht's assertions, there were marked similarities between his prior misconduct and the charged count of prostitution, demonstrating a common scheme or plan. Moreover, Hecht's common scheme and plan to solicit prostitutes in downtown Tacoma was probative as to whether Hecht's payments to Pfeiffer were for prostitution rather than gifts Hecht claimed he gave as a "grandfather figure." The trial court ensured that the prosecutor used the evidence only for the permissible purpose of arguing against the defense theory by demonstrating a recurring scheme or plan.

Hecht was not unfairly prejudiced by the admission of Marx's and Smith's testimony. The trial court repeatedly cautioned the jury that its consideration of the testimony was limited to the issue of a common scheme or plan. Jurors are presumed to follow the court's limiting instructions.[30] And although the testimony concerned illegal

---

[30] Lough, 125 Wn.2d at 864.

acts, jurors were repeatedly instructed not to consider the evidence as proof of Hecht's criminal propensity.

The trial court did not abuse its discretion in admitting Marx's and Smith's testimony about their encounters with Hecht.

*Jury Instructions*

Hecht contends his conviction must be reversed because the State failed to set forth the element of a true threat in the information and to-convict instruction defining the offense of felony harassment. Consistent with Hecht's concession at oral argument, this issue is controlled by our Supreme Court's recent decision in State v. Allen.[31]

In Allen, the court held that the true threat is not an essential element required in either the information or the to-convict jury instruction.[32] A charging document alleging felony harassment is sufficient if it alleges that the defendant knowingly threatened the victim.[33] And the jury instructions for felony harassment are sufficient if the jury instructions contain the definition of "true threat."[34] Here, the amended information alleged that Hecht knowingly threatened to kill Hesketh, and the jury instructions contained the definition of "true threat." Hecht fails to demonstrate any basis for relief in light of Allen.

---

[31] 176 Wn.2d 611, 294 P.3d 679 (2013).

[32] Id. at 630.

[33] Id. at 627.

[34] Id. at 627-28. A "true threat" is "'a statement made in a context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted . . . as a serious expression of intention to inflict bodily harm upon or to take the life' of another person." Id. at 626 (alteration in original) (quoting State v. Kilburn, 151 Wn.2d 36, 43, 84 P.3d 1215 (2004)).

*Sufficiency of Evidence*

Hecht argues that the evidence was insufficient to support his harassment conviction because it failed to support any inference that Hesketh had a reasonable fear that Hecht would carry out his threat, or that Hecht could have foreseen that Hesketh might view his statements as a true threat.

"A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom."[35] The evidence is reviewed in the light most favorable to the State to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[36] The appellate court will not reassess credibility.[37]

Taking the evidence of record in the light most favorable to the State, the evidence amply supports the inferences that Hesketh was afraid, that Hecht could foresee that Hesketh would consider the threat to be a true threat, and that the threat was a true threat. Sufficient evidence supports the elements of felony harassment.

*Statement of Additional Grounds*

Finally, Hecht argues in his statement of additional grounds that his participation in the ongoing Commission of Judicial Conduct proceedings effected a violation of his right against self-incrimination and his right to prepare a defense and not disclose his attorney's work product. But evidence outside the trial record is not properly considered

---

[35] State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

[36] State v. Joy, 121 Wn.2d 333, 338, 851 P.2d 654 (1993).

[37] State v. Camarillo, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

in this direct appeal. Typically, such information would be reviewed as part of a personal restraint proceeding.[38] Hecht's arguments all depend on matters outside of the trial record on appeal, regardless of Hecht's attachment of such materials to his statement of additional grounds.

Hecht's challenges to the adequacy of his defense counsel's performance are also without merit. Many of Hecht's allegations concern matters outside the trial record. Other issues are treated only in passing, without citation to authority. The record on appeal is wholly inadequate to permit resolution of these issues.

CONCLUSION

Because of prosecutorial misconduct, the convictions are reversed and remanded for a new trial.

WE CONCUR:

_____, C. J.

_____, J.

Becker, J.

---

[38] State v. Bugai, 30 Wn. App. 156, 158, 632 P.2d 917 (1981); State v. King, 24 Wn. App. 495, 505, 601 P.2d 982 (1979).