# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Personal Restraint of | ) ) ) | No. 71436-8-I |
| | ) | DIVISION ONE |
| JAY EARL MCKAGUE, | ) ) | UNPUBLISHED OPINION |
| Petitioner. | ) ) | |
| | ) ) | FILED: June 30, 2014 |

TRICKEY, J. — Jay Earl McKague is currently serving a sentence of life without the possibility of parole as a persistent offender following his convictions of second degree assault and third degree theft. The Supreme Court affirmed his convictions and sentence in State v. McKague, 172 Wn.2d 802, 262 P.3d 1225 (2011). McKague now brings a personal restraint petition, asserting, inter alia, that the prosecutor committed prejudicial misconduct when he displayed a slide to the jury featuring the word "GUILTY" superimposed across a photograph of McKague's face. Adhering to our Supreme Court's decision in In re Pers. Restraint of Glasmann, 175 Wn.2d 696, 286 P.3d 673 (2012), we grant relief and order a new trial.

## FACTS

The pertinent facts of this case are set forth in McKague's direct appeal as follows:

> McKague shoplifted a can of smoked oysters from Kee Ho Chang's convenience store. Chang followed McKague out of the store and confronted him in the parking lot. When McKague tried to leave, Chang grabbed his sweat shirt. McKague punched Chang in the head several times and pushed him to the ground, causing Chang's head to strike the pavement. While Chang was on the ground, McKague punched him several more times and then left in a friend's car. Chang tried to get up, but he was dizzy and unable

to stand for a time. Officer George Samuelson arrived at the store and noted that the side of Chang's face was extremely puffy. Officer Samuelson described Chang as seeming out of sorts, appearing distracted and stunned. Detective Sam Costello interviewed Chang and noted injuries to Chang's face and the back of his head.

. . . .

McKague was charged with first degree robbery, with third degree theft as an inferior offense, and second degree assault predicated on the infliction of substantial bodily injury. At McKague's request, the court also instructed the jury on third degree assault as an inferior offense of second degree assault. The jury convicted McKague of third degree theft and second degree assault.

McKague, 172 Wn.2d at 804.

During the State's closing argument, the prosecutor presented a slideshow to the jury.[1] A number of the slides displayed trial evidence, including images captured by the store's security camera and photographs of the victim's injuries.[2] The slides also referred to the jury instructions pertaining to the charged crimes of first degree robbery and second degree assault.[3]

The final slide presented to the jury is at issue in this PRP and is reproduced below. As shown, the word "GUILTY" was printed in large red letters and superimposed over an image of McKague's face.[4] The image was cropped from a security camera photograph of McKague that had been admitted into

---

[1] The prosecutor's closing argument slides are attached to the personal restraint petition (PRP) in exhibit (Ex.) A. We cite to those slides because the original slides are not provided in the record.
[2] PRP, Ex. A.
[3] PRP, Ex. A.
[4] PRP, Ex. A.

evidence.[5] Adjacent to arrows encircling the image were captions that read: "TOOK can of oysters"; "INTENDED to commit THEFT"; "During the taking-the defendant resorted to force"; "Force used to retain or prevent"; "or overcome resistance to taking"; ". . . inflicted bodily injury"; "TOOK OFF"; and, "'GO-GO-GO.'"[6] The following image is a black and white representation of the slide, which, according to the parties, was displayed in color at closing argument:



Upon review of the transcript, it appears that the prosecutor made the following remark while showing this slide to the jury:

> Ladies and gentlemen, I touched upon -- earlier I touched upon direct evidence and circumstantial evidence. Direct evidence, what somebody sees, hears, smells, and then inferences that you may draw from your common experience. This defendant was in a big rush to get away from there, and then of course when somebody runs, that is something from which we may draw the inference that he knows he's guilty not of simply shoplifting, not of mere theft but of robbery, and on the evidence, ladies and gentlemen, the defendant is guilty as charged.[7]

---

[5] PRP, Ex. A.

[6] PRP, Ex. A.

[7] 3 Report of Proceedings (RP) at 261-62.

This statement concluded the prosecutor's closing argument.[8]

McKague now files this PRP.

ANALYSIS

McKague's primary contention is that prosecutorial error deprived him of his right to a fair trial. He argues that the prosecutor's use of the "GUILTY" slide was so flagrant and ill intentioned that it prejudiced the outcome of the trial. We agree and reverse his convictions.

To obtain relief on collateral review based on a constitutional error, the petitioner must demonstrate by a preponderance of the evidence that he or she was actually and substantially prejudiced by the error. In re Pers. Restraint of Davis, 152 Wn.2d 647, 671-72, 101 P.3d 1 (2004).

The Sixth and Fourteenth Amendments to the United States Constitution, as well as article I, section 22 of the Washington State Constitution, guarantee a defendant the fundamental right to a fair trial. Estelle v. Williams, 425 U.S. 501, 503, 96 S. Ct. 1691, 48 L. Ed. 2d 126 (1976); State v. Finch, 137 Wn.2d 792, 843, 975 P.2d 967 (1999). Prosecutorial misconduct may deprive a defendant of this right. State v. Davenport, 100 Wn.2d 757, 762, 675 P.2d 1213 (1984).

A prosecutor has wide latitude in closing argument to draw reasonable inferences from the facts in evidence and to express such inferences to the jury. State v. Thorgerson, 172 Wn.2d 438, 448, 258 P.3d 43 (2011). But a prosecutor must nevertheless "seek convictions based only on probative evidence and

---

[8] 3 RP at 262.

sound reason." State v. Casteneda-Perez, 61 Wn. App. 354, 363, 810 P.2d 74 (1991).

Prosecutorial misconduct constitutes a ground for reversal if the defendant can demonstrate that the challenged conduct was both improper and resulted in prejudice. State v. Monday, 171 Wn.2d 667, 675, 257 P.3d 551 (2011). Because McKague failed to object to the prosecutor's use of the "GUILTY" slide at trial, he "is deemed to have waived any error, unless the prosecutor's misconduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice."[9] State v. Emery, 174 Wn.2d 741, 760-61, 278 P.3d 653 (2012). McKague therefore has the burden of establishing that "(1) 'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.'" Emery, 174 Wn.2d at 761 (quoting Thorgerson, 172 Wn.2d at 455). Reviewing courts "focus less on whether the prosecutor's misconduct was flagrant or ill intentioned and more on whether the resulting prejudice could have been cured." Emery, 174 Wn.2d at 762.

In Glasmann, during closing argument, the State presented several slides containing Glasmann's booking photograph, where he appeared unkempt and bloody. 175 Wn.2d at 701, 705. The court described the slides as follows:

> In one slide, the booking photo appeared above the caption, "DO YOU BELIEVE HIM?" In another booking photo slide the caption read, "WHY SHOULD YOU BELIEVE ANYTHING HE SAYS ABOUT THE ASSAULT?" Near the end of the presentation, the booking photo appeared three more times: first with the word

---

[9] See 3 RP at 261-62.

"GUILTY" superimposed diagonally in red letters across Glasmann's battered face. In the second slide the word "GUILTY" was superimposed in red letters again in the opposite direction, forming an "X" shape across Glasmann's face. In the third slide, the word "GUILTY," again in red letters, was superimposed horizontally over the previously superimposed words.

Glasmann, 175 Wn.2d at 701-02 (internal record citations omitted). The prosecutor instructed the jury in closing argument that it should not believe Glasmann's testimony, and it must determine whether he told the truth when he testified. Glasmann, 175 Wn.2d at 701.

The Supreme Court found that the presentation of these slides to the jury was improper for two reasons. First, the prosecutor altered the booking photograph, admitted as an exhibit, by superimposing captions. Glasmann, 175 Wn.2d at 700, 706. Thus, the court concluded, by modifying the exhibits, the prosecutor improperly submitted evidence to the jury that was not part of the trial. Glasmann, 175 Wn.2d at 706. Second, the prosecutor expressed his personal opinion of Glasmann's guilt through the slideshow and closing argument. Glasmann, 175 Wn.2d at 706-07. The court held that the prosecutor's misconduct was flagrant and ill intentioned, and that instructions could not have cured the prejudicial effect. Glasmann, 175 Wn.2d at 707.

Consistent with Glasmann, the prosecutor's use of the "GUILTY" slide here amounted to improper conduct.[10] The prosecutor altered the photograph of

---

[10] We recently reviewed a similar case in State v. Hecht, 179 Wn. App. 497, 319 P.3d 836 (2014). The prosecutor there presented inflammatory slides to the jury during closing argument. Hecht, 319 P.3d at 839. On two slides appeared the word "GUILTY" in red and across a photograph of Hecht's face. Hecht, 319 P.3d at 839. An additional slide, entitled "'DEFENDANT'S CREDIBILITY,' asked 'If he's not truthful about the little

McKague by cropping it and digitally placing the word "GUILTY" across it. Moreover, the slide, coupled with the prosecutor's comment that McKague "is guilty as charged," constituted an expression of the prosecutor's personal opinion on McKague's guilt.[11]

We also find that the prosecutor's misconduct in presenting this highly inflammatory slide had a substantial likelihood of affecting the jury's verdict and was incurable by jury instruction. The prosecutor's use of the "GUILTY" slide was a deliberate attempt to induce the jury to convict McKague of the charged crimes. No purpose could be served by presenting this slide other than to inflame the prejudice and passions of the jury. As described above, the word "GUILTY" was printed in red and in large, capitalized letters across a photograph of McKague's face, with arrows pointing toward the image. This depiction compelled the jurors to reach a harsh verdict by "drawing the eye, implying urgency of action, and evoking emotion." Hecht, 319 P.3d at 841. Given the prosecutor's position of power and prestige, his expression of opinion as to McKague's guilt potentially had significant persuasive force with the jury. See Glasmann, 175 Wn.2d at 706.

---

things . . . [w]hy should you believe him when he denies the big things?', and answered 'YOU SHOULDN'T.'" Hecht, 319 P.3d at 839. Relying on Glasmann, we concluded that the prosecutor's misconduct "was so flagrant and ill-intentioned that it caused an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury." Hecht, 319 P.3d at 841.

We are also aware that our Supreme Court has granted review of a recent decision from Division Two addressing whether the State committed prosecutorial misconduct in closing argument when it presented a slideshow with prejudicial images. State v. Walker, 178 Wn. App. 478, 315 P.3d 562 (2013) (pub. in part), rev. granted, 180 Wn.2d 1002 (2014). This issue was discussed in the unpublished portion of the opinion.
[11] 3 RP at 262.

In addition, the "GUILTY" slide was the final one presented during the prosecutor's closing argument, leaving a lasting impression upon the jury before it was excused for deliberation. Highly prejudicial images such as this one "may be very difficult to overcome with an instruction," and are especially troublesome when shown in the closing arguments of a trial. Glasmann, 175 Wn.2d at 707.

We recognize that the circumstances in Glasmann are slightly distinguishable from those here. The cumulative effect of the multiple sides shown to the jury in that case contributed to the court's decision to reverse Glasmann's convictions. Glasmann, 175 Wn.2d at 710-14. Here, however, the prosecutor's misconduct was limited to a single slide. But this distinction does not render the prosecutor's presentation of the "GUILTY" slide any less prejudicial. The slide was a calculated device employed by the prosecutor to manipulate the jury's reasoned deliberation and impair its fact finding function. It substantially undermined McKague's right to a fair trial.

We reverse McKague's convictions and remand for a new trial.[12] If, on remand, McKague is ordered to wear a physical restraint of any kind throughout trial, we instruct the trial court to conduct a hearing and enter findings into the record justifying the use of such restraint.[13] See State v. Hartzog, 96 Wn.2d 383,

---

[12] Because we reverse McKague's convictions and sentence, and remand for retrial, we do not reach his remaining contentions.

[13] In his PRP, McKague asserts several constitutional claims of error relating to the shock device he was required to wear during trial. Physical restraints are disfavored because they may imperil an accused's constitutional right to a fair trial by reversing the presumption of innocence. State v. Elmore, 139 Wn.2d 250, 273, 985 P.2d 289 (1999). They can also infringe upon an accused's constitutional rights to testify on his or her behalf and to confer with counsel during the course of trial. State v. Damon, 144 Wn.2d

400, 635 P.2d 694 (1981) ("A trial judge must exercise discretion in determining the extent to which courtroom security measures are necessary to maintain order and prevent injury. That discretion must be founded upon a factual basis set forth in the record."); see also Damon, 144 Wn.2d at 691 (Before requiring a defendant to wear a restraint during trial, the court must consider on the record a number of factor such as the seriousness of the charges, the defendant's physical characteristics, previous escape attempts, the physical security of the courtroom, and the availability of alternatives.).

_Trickey, J_

WE CONCUR:

_Appelwick_     _Becker, J_

---

686, 691, 25 P.3d 418 (2001). Here, the trial court did not consider on the record whether the shock device was necessary. But we need not decide whether the trial court committed reversible error by failing to do so.

9