IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| SCOTT WENDEL DIXON, | No. 84639-6-I |
| Appellant, | |
| | DIVISION ONE |
| v. | |
| STATE OF WASHINGTON, | UNPUBLISHED OPINION |
| Respondent. | |

CHUNG, J. — A jury convicted Scott Dixon of rape of a child in the third degree. Dixon now appeals the admission of evidence of prior acts based on the Washington Supreme Court's decision in State v. Crossguns, 199 Wn.2d 282, 505 P.3d 529 (2022), which disallowed admission of such evidence for the purpose of showing "lustful disposition." However, the record shows additional proper purposes for admitting the evidence under ER 404(b), so the court did not abuse its discretion. We therefore affirm.

FACTS

Dixon began dating Jennifer[1] early in 2019. Shortly thereafter, Jennifer introduced him to her children at an impromptu party at her house where there was drinking and dancing. Dixon was 46 years old at the time and M.M. was 15 years old.

___

[1] Consistent with RCW 7.69A.030(4) regarding the rights of victims of crime who are children, the surname of the victim's family is not disclosed.

On that night when Dixon first met Jennifer's children, according to M.M., three events occurred. First, M.M. claimed that Dixon "pushed himself on me" and pressed "his genitalia," his "front," against her "butt" as she leaned over her mother to help choose a song. M.M. stated that there was enough space for him to have walked behind her, and that she knew it was his front because she "felt him." Second, Dixon "scooped" up M.M. and cradled her "the way you would hold a baby." Third, when everyone had gone to bed, Dixon locked himself out of Jennifer's room. He went to M.M.'s bedroom, where his niece was staying, and asked for M.M.'s help. When they could not open the door or rouse Jennifer, Dixon went back to M.M.'s room, sat on her bed, and "rested his head like on my butt . . . like a pillow" for "like two minutes" before Jennifer let him back in her room.

About a month later, Dixon was watching TV in Jennifer's room with all her family except for her oldest daughter, 18-year-old Kylie, who was in her own room. Jennifer was passed out on her bed from drinking. M.M. was on the bed, with Jennifer's youngest son, between Jennifer and Dixon. Dixon "scooted over" to M.M. and "tried to pull [M.M.] closer to him." Dixon asked if that was OK, and M.M. said no. Nonetheless, according to M.M., Dixon put his left hand down the front of M.M.'s pants and put his fingers inside M.M.'s vagina. M.M. announced she had to use the bathroom and ran to Kylie to tell her what happened. Kylie threw Dixon out of the house. Less than a week later, M.M. and Kylie called the police who forensically interviewed M.M. and charged Dixon with third degree rape of a child.

2

Dixon and the State filed opposing motions in limine regarding the three events from the night Dixon first met M.M. and the rest of Jennifer's children. The State moved to admit testimony about the three events "to show the defendant's lustful disposition toward M.M., motive, intent, plan, and the normalizing [of] the touching of the victim." Dixon moved to exclude the same incidents.

The court held a pre-trial hearing to consider the admissibility of evidence of these three events under ER 404(b): Dixon brushing up against M.M. from behind, picking her up, and resting his head on her behind. In response to the court's questions, the State clarified that these incidents all involved the victim, M.M., not others, and that they all occurred the first day Dixon met M.M. Dixon argued that none of the activities demonstrated a lustful disposition because they were "innocuous conduct," that lustful disposition did not "correlate[] with those actions," and they were not relevant. In response, the State argued that "the actions in and of themselves can be innocuous," but together with the allegations in the case, they demonstrated "a more lustful disposition and Mr. Dixon's intent."

The court rejected the State's suggestion that M.M. could testify that the events were not innocuous from her perspective and that they made her "feel uncomfortable." The court agreed with Dixon that ER 404(b) evidence was not admissible "for the purpose of demonstrating the feelings of the victim." The court reasoned that 15-year-old M.M. lacked the legal capacity to consent regardless of whether she felt offended. The court also decided that even though the events occurred some weeks or months before the date of the charged incident, M.M. could testify to each event. However, the court excluded any testimony as to

3

whether M.M. was "highly offended or fearful" based on lack of relevance and potential undue prejudice.

Pursuant to its oral ruling, the court's written order permitted M.M. to testify about the three events "for the purposes of lustful disposition, motive, and intent." The court "limited the evidence to testimony of the physical interactions only."[2] The order "specifically excluded how any witnesses may have perceived the touchings or how it may have made any witnesses feel, including M.M."

At trial, M.M. testified about each of the three events.[3] The jury found Dixon guilty of rape of a child in the third degree. Dixon timely appeals.

ANALYSIS

Dixon assigns error to the trial court's decision to admit M.M.'s testimony about the three prior "bad acts"—i.e., Dixon brushing up behind her, picking her up, and resting his head on her behind. Dixon's trial occurred in August 2021, prior to the Supreme Court's decision in Crossguns. Dixon argues that after Crossguns was decided, "Washington Courts may no longer admit evidence of collateral misconduct in order to demonstrate the accused's 'lustful disposition' toward the complaining witness," so the trial court erred by admitting M.M.'s testimony about the three prior acts.

In Crossguns, the Washington Supreme Court held the term "lustful disposition" "must be rejected" and must "no longer be cited" as a distinct purpose for admitting evidence under ER 404(b). 199 Wn.2d at 290. However,

---

[2] (Emphasis in original.)
[3] Although the State stated at the hearing that it would not object to a limiting instruction if the events were admitted, at trial, the court gave no limiting instructions to the jury.

such evidence "remains admissible . . . for some other, proper purpose." Id. at 294. Thus, the proper inquiry after Crossguns is whether M.M.'s testimony was admissible for a proper purpose under ER 404(b).[4]

ER 404(b) states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Thus, ER 404(b) is a "categorical bar" to the admission of certain types of character evidence, namely, evidence of other crimes, wrongs, or acts, for the purpose of showing the person acted on the charged occasion in conformity with that character, i.e., for propensity. State v. Gresham, 173 Wn.2d 405, 420, 269 P.3d 207 (2012) (citing State v. Saltarelli, 98 Wn.2d 358, 362, 655 P.2d 697 (1982)). However, ER 404(b) generally allows the same types of character evidence for purposes other than propensity, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Crossguns, 199 Wn.2d at 289-90 (internal quotations omitted).

To admit evidence of a person's other crimes, wrongs, or acts under ER 404(b), "the trial court must (1) find by a preponderance of the evidence that the misconduct occurred, (2) identify the purpose for which the evidence is sought to be introduced, (3) determine whether the evidence is relevant to prove an element of the crime charged, and (4) weigh the probative value against the prejudicial effect." Gresham, 173 Wn.2d at 421 (quoting State v. Thang, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002)). The third and fourth elements ensure that

---

[4] The State must first show by a preponderance that the misconduct to which M.M. would testify occurred. Thang, 145 Wn.2d at 642. Here, Dixon did not contest whether the three events occurred, but instead, argued that the conduct was innocuous.

the evidence does not "run afoul" of ER 402 or ER 403, respectively. Gresham, 173 Wn.2d at 421. The party seeking to introduce evidence has the burden of establishing the first, second, and third elements. Id. at 421. Because the burden is on the proponent, evidence of other crimes, wrongs, or acts is presumptively inadmissible. Id. at 421. "In doubtful cases, the evidence should be excluded." Thang, 145 Wn.2d at 642.

We review the trial court's ruling to admit or exclude evidence of misconduct for an abuse of discretion. State v. Fisher, 165 Wn.2d 727, 745, 202 P.3d 937 (2009) (citing State v. Foxhoven, 161 Wn.2d 168, 174, 163 P.3d 786 (2007). "There is an abuse of discretion when the trial court's decision is manifestly unreasonable or based upon untenable grounds or reasons." State v. Brown, 132 Wn.2d 529, 572, 940 P.2d 546 (1997) (citing State v. Powell, 126 Wn.2d 244, 258, 893 P.2d 615 (1995)). In making this inquiry, this court considers "bases mentioned by the trial court as well as other proper bases on which the trial court's admission of evidence may be sustained." Powell, 126 Wn.2d at 259. The erroneous admission of evidence under ER 404(b) is analyzed under the nonconstitutional harmless error standard, which asks whether, within reasonable probabilities, had the error not occurred, the trial's outcome would have been materially affected. Gresham, 173 Wn.2d at 433.

The State's motion in limine argued that, in addition to being admissible to show lustful disposition, the testimony was admissible to show "motive, intent, plan, and the normalizing the touching of the victim," and discussed cases in

which evidence of grooming[5] was admitted. Accordingly, the court below admitted the testimony not only to show lustful disposition, but also to show motive and intent.

"Grooming" and "access and control" are "necessary components" of sex crimes, and such "misconduct may be relevant and admissible in cases . . . that involve sexual abuse in the context of a relationship with unequal power dynamics." Crossguns, 199 Wn.2d at 294-96 (citing Basyle J. Tchividjian, Predators and Propensity: The Proper Approach for Determining the Admissibility of Prior Bad Acts Evidence in Child Sexual Abuse Prosecutions, 39 AM. J. CRIM. L. 327, 364, 368 (2012) (footnotes omitted)). Here, M.M.'s testimony about the three incidents of touching was admissible to establish that Dixon had motive and intent, as well as a plan to normalize the touching of the victim, i.e. to groom M.M. These were proper non-propensity purposes under ER 404(b). See Crossguns, 199 Wn.2d at 294 (proper other ER 404(b) purposes include intent, motive, opportunity, common scheme or plan, preparation, and absence of accident or mistake).

The testimony must also be relevant to prove an element of the crime charged. Thang, 145 Wn.2d at 642. Dixon argues intent is not an element of third-degree rape of child under RCW 9A.44.079, so any testimony about intent was irrelevant and inadmissible. The State agrees intent is not an element of the

---

[5] "[G]rooming[ is] a process by which child molesters gradually introduce their victims to more and more explicit sexual conduct." State v. Quigg, 72 Wn. App. 828, 833, 866 P.2d 655 (1994). A trial court may properly admit grooming evidence as evidence of a plan under ER 404(b). See State v. Hecht, 179 Wn. App. 497, 508, 319 P.3d 836 (2014) (citing DeVincentis, 150 Wn.2d at 17).

7

statute but contends that "Dixon's intent/inclination toward or focus on M.M. to the exclusion of other young females is relevant."

ER 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evidence that Dixon, a 46-year-old man dating M.M.'s mother, had the motive, intent, and plan to target and groom M.M. makes it more probable that he engaged in the charged act. Thus, the evidence of the three prior acts of misconduct meets the low threshold for relevance.

Further, the court did not abuse its discretion in determining that the probative value of the evidence outweighed its prejudicial effect. The question when applying ER 404(b) is not whether the evidence is relevant; the question is whether the evidence "weigh[s] too much with the jury and [ ] so overpersuade[s] them as to prejudge [the defendant] with a bad general record [that] den[ies the defendant] a fair opportunity to defend against a particular charge." Michelson v. United States, 335 U.S. 469, 475-76, 69 S. Ct. 213, 93 L. Ed. 168 (1948), quoted in State v. Slocum, 183 Wn. App. 438, 456, 333 P.3d 541 (2014). "[A]n intelligent weighing of potential prejudice against probative value is particularly important in sex cases, where the prejudice potential of prior acts is at its highest." Saltarelli, 98 Wn.2d at 363.

In balancing probative value versus prejudicial effect, the court determined the evidence of the interactions was not unfairly prejudicial. The court also recognized the potential prejudice if M.M. were allowed to testify beyond the

8

interactions themselves, stating, "it is potentially unduly prejudicial when the 15-year-old says, I was highly offended or fearful."[6] Thus, the court limited the evidence to "testimony of physical interactions only" and "specifically excluded how any witnesses may have perceived the touchings or how it may have made any witnesses feel, including M.M."

In sum, while lustful disposition is no longer a proper purpose for admitting evidence of other acts under ER 404(b), the trial court did not err in admitting M.M.'s testimony about the three prior acts. The evidence was admissible for the other non-propensity purposes of motive, intent, and plan to groom. Further, the court properly weighed the testimony's probative value against its prejudicial effect and limited M.M. to testifying only about the physical interactions to minimize prejudice. Therefore, the trial court did not abuse its discretion by admitting this testimony.[7]

We affirm.

_Chung, J._

WE CONCUR:

_Bowman, J_          _Smith, A.C.J._

---

[6] The court also recognized that whether M.M. felt offended or fearful after the interactions was not material to the claim.

[7] Because we find no error, we need not conduct a harmless error analysis.

9