IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 85922-6-I |
| Respondent, | DIVISION ONE |
| v. | |
| MICHAEL EUGENE NORVELL, | UNPUBLISHED OPINION |
| Appellant. | |

SMITH, C.J. — Michael Norvell appeals the judgment and sentence entered on his conviction for robbery in the second degree. Norvell asserts that the trial court erred by declining to give an instruction on assault in the fourth degree as a lesser included offense, by finding that there was sufficient evidence to support his conviction, by imposing a community custody condition that he obtain an anger management evaluation, and by imposing a victim penalty assessment. We remand for the trial court to strike the victim penalty assessment and otherwise affirm.

FACTS

On July 30, 2022, Norvell entered a Grocery Outlet store in Silverdale, Washington. Store owners Mary Christina and James Gochmansky were both present on the premises that day. While observing the camera feed in the office, James[1] observed a man, later identified as Norvell, on aisle one carrying an

---

[1] We refer to the Gochmanskys as James and Christina solely for purposes of clarity.

orange shopping bag. When James looked up at the camera feed again, he observed Norvell still on aisle one, looking over his shoulder to see who was watching. James and Christina watched as Norvell pulled a pack of art pens and a large item, possibly an easel, from the shelf and put them in his bag. Norvell proceeded to "meander" around the store, "hanging around and just looking at things." Christina alerted some of the employees that they were watching Norvell for suspicious behavior.

At some point, Norvell tried to leave the store by walking past a cashier without paying. Christina approached Norvell and asked to look inside his bag. Norvell refused, told her "fuck you," and walked around her. Christina informed Norvell that he could not leave the store without paying for the items he had put in his bag.

James then approached Norvell and asked him to leave the item that he had put in his bag. Norvell pushed James out of his way. James followed Norvell out of the store and informed him that there were cameras inside the store and that he had been seen on video. Norvell swung his bag at James twice and then fled on foot.

The large item was eventually recovered from inside the store. The art pens were never recovered.

Norvell was charged by amended information with robbery in the second degree. At trial, the jury heard testimony from James, Christina, Kitsap County Sheriff's Deputies Chancie Grondin and Ryan McGovern, and Kitsap County Corrections Officer Ken Watkins.

James and Christina both testified that theft is a regular problem at their Grocery Outlet and they have multiple measures in place to help prevent theft. Both testified that the Grocery Outlet has upgraded cameras in place that capture each aisle and register, as well as the exterior of the store. The store also has a policy that large bags must be left at the front and has multiple signs posted to advise its customers of this policy. Each day, the store's objective is to account for all items coming and going from the store. These policies are in place because any item taken from the store comes out of the store's expenses and, accordingly, out of the Gochmanskys' salaries.

James and Christina also testified that people they have seen attempting to steal from their store tend to exhibit similar behavior patterns. These behaviors include lingering in an aisle until it is clear of other customers, looking around at other customers rather than purposely shopping, shuffling items around in grocery carts, putting items in bags, and hovering around the front of the store. James and Christina also testified that most items tend to be stolen from aisle one, where non-food items are displayed, and the alcohol display. If James or Christina notice someone attempting to leave the store with a concealed item in their bag, they usually approach the person and ask to see inside the bag. According to James and Christina, most people are defensive when asked but will give the product back.

After the State had rested its case, Norvell moved for a directed verdict of not guilty. Norvell argued that because he was not seen with the large item at the time he left the store and because the witnesses were not able to see him at

all times, no reasonable juror could find that he committed a theft. The trial court denied the motion, concluding that there was sufficient testimony to allow the case to be considered by the jury.

The jury found Norvell guilty as charged. Norvell was sentenced to 24 months of imprisonment, followed by 18 months of community custody. As a condition of community custody, Norvell was ordered to obtain an anger management evaluation. The trial court explained that it was ordering this condition because Norvell's swinging a full bag at the store owner multiple times in response to a simple request to open his bag was "out of line" and was indicative "that there is an issue that, you know, could be helpful to look at."

Norvell appeals.

ANALYSIS

Lesser Included Offense Instruction

Norvell asserts that he was entitled to a jury instruction on assault in the fourth degree as a lesser included offense of robbery in the second degree. Norvell contends that the trial court's refusal to give the requested instruction constitutes structural error requiring reversal of his conviction. We disagree.

"We review de novo a trial court's refusal to give an instruction based on an issue of law." State v. Douglas, 128 Wn. App. 555, 562, 116 P.3d 1012 (2005). A criminal defendant is entitled to an instruction on a lesser included offense if "(1) each of the elements of the lesser offense is a necessary element of the charged offense and (2) the evidence in the case supports an inference that the lesser crime was committed." State v. Henderson, 182 Wn.2d 734, 742,

344 P.3d 1207 (2015) (citing State v. Workman, 90 Wn.2d 443, 447–48, 584 P.2d 382 (1978)). This right derives from RCW 10.61.006, which states that "[i]n all other cases the defendant may be found guilty of an offense the commission of which is necessarily included within that with which he or she is charged in the indictment or information."

We begin with the legal prong of the Workman test. Inherent in our analysis of Workman's legal prong is the defendant's constitutional right to have notice of the crime charged. State v. Gamble, 154 Wn.2d 457, 463, 114 P.3d 646 (2005) (citing State v. Berlin, 133 Wn.2d 541, 546, 947 P.2d 700 (1997)). "Because the defendant must have notice of the offense of which he or she is charged, the elements of any lesser included offense must necessarily be included in the elements of the offense as charged." Berlin, 133 Wn.2d at 545. If the lesser offense contains an element that is not required for the offense charged by the State, it is not a lesser included offense and the defendant is not entitled to an instruction therein. See e.g., State v. Tamalini, 134 Wn.2d 725, 729-30, 953 P.2d 450 (1998) (first and second degree manslaughter not lesser included offenses of felony murder); State v. Harris, 121 Wn.2d 317, 321, 849 P.2d 1216 (1993) (assault not a lesser included offense of attempted murder).

The State charged Norvell with robbery in the second degree. The amended information defined the offense as follows:

> On or about July 30, 2022, in the County of Kitsap, State of Washington, the above-named Defendant did, with intent to commit theft thereof, unlawfully take personal property that Defendant did not own from the person of another, to-wit: JAMES L. GOCHMANSKY, or in said person's presence against said person's

will by the use or threatened use of immediate force, violence, or fear of injury to said person or the property of said person or the person or property of another; contrary to the Revised Code of Washington 9A.56.210(1) and 9A.56.190.

The charging document was consistent with RCW 9A.56.190, which states that

[a] person commits robbery when he or she unlawfully takes personal property from the person of another or in his or her presence against his or her will by the use or threatened use of immediate force, violence, or fear of injury to that person or his or her property or the person or property of anyone.

"A person is guilty of assault in the fourth degree if, under circumstances not amounting to assault in the first, second, or third degree, or custodial assault, he or she assaults another." RCW 9A.36.041(1). "Assault" is defined by the common law as

" '(1) an attempt, with unlawful force, to inflict bodily injury upon another [attempted battery]; (2) an unlawful touching with criminal intent [battery]; [or] (3) intentionally putting another in reasonable apprehension of harm, whether or not the actor actually intends to inflict or is incapable of inflicting that harm.' "

State v. Russell, 69 Wn. App. 237, 246–47, 848 P.2d 743 (1993) (first and second alterations in original) (quoting State v. Hupe, 50 Wn. App. 277, 282, 748 P.2d 263 (1988)). At issue here is whether the commission of robbery in the second degree necessarily requires the commission of an assault. We hold that it does not.

As the State correctly asserts, it is legally possible to commit robbery in the second degree without committing assault in the fourth degree. Our Supreme Court has noted that the statute defining what constitutes a robbery "does not merely provide that the force must be directed at a person. It also provides that the use or threat of force, violence, or fear of injury may be directed

to property." State v. Tvedt, 153 Wn.2d 705, 711, 107 P.3d 728 (2005). The charging document reflects this distinction, charging Norvell with obtaining property belonging to James Gochmansky "by the use or threatened use of immediate force, violence, or fear of injury to said person *or the property* of said person or the person or property of another." (Emphasis added.) However, for an assault to occur, the threat of harm must necessarily be directed toward a person. Russell, 69 Wn. App. at 246–47. Therefore, because assault in the fourth degree contains an element (threat of harm to a person) that robbery in the second degree does not, it cannot be considered a lesser included offense.

Norvell nevertheless contends that assault in the fourth degree is necessarily a lesser included offense of robbery in the second degree where the State has alleged the use of force. For this assertion, Norvell relies upon Berlin's holding that the legal prong of Workman must analyze the crime "as charged." 133 Wn.2d at 545. But Norvell's argument conflates the crime charged with the evidence presented to support the charge. Norvell was charged with robbery in the second degree, which requires the State to prove that Norvell unlawfully took "personal property from the person of another or in his or her presence against his or her will by the use or threatened use of immediate force, violence, or fear of injury to that person or his or her property or the person or property of anyone." RCW 9A.56.190. Robbery in the second degree is not an alternative means crime and could not have been charged any other way.[2] State v. Todd,

_____

[2] In Berlin, the defendant was charged with intentional murder in the second degree and felony murder in the second degree, which are alternative means of committing murder in the second degree. 133 Wn.2d at 553. The

7

200 Wn. App. 879, 888, 403 P.3d 867 (2017). That the State ultimately sought to prove that Norvell used physical force to retain the stolen property is relevant to the factual prong of Workman, not the legal prong. But because the legal prong has not been satisfied, we need not analyze the factual prong in this case. Norvell's argument fails regardless of the facts presented at trial.

Sufficiency of the Evidence

Norvell asserts that there was no evidence for the jury to find that he had committed a theft and, accordingly, that his conviction is not supported by substantial evidence. We disagree.

Evidence is sufficient if, when viewed in the light most favorable to the State, it permits a rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. State v. Tilton, 149 Wn.2d 775, 786, 72 P.3d 735 (2003). When the sufficiency of the evidence is challenged in a criminal case, all reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Circumstantial evidence receives the same weight as direct evidence. State v. Thomas, 150 Wn.2d 821, 874, 83 P.3d 970 (2004). "Appellate courts defer to the fact finder on the resolution of conflicting testimony, credibility determinations, and the persuasiveness of the evidence." State v. Munoz-Rivera, 190 Wn. App. 870, 882, 361 P.3d 182 (2015).

---

court held that the trial court correctly instructed the jury that manslaughter was a lesser included offense of intentional murder but not felony murder. Berlin, 133 Wn.2d at 543.

The evidence presented in this case was sufficient for a jury to convict Norvell of robbery in the second degree. James and Christina both testified that they observed Norvell placing a set of art pens into his bag. A photograph was admitted into evidence depicting Norvell with the art pens in his hand. While the large item that Norvell had also placed in his bag was recovered from inside the store, the art pens were not.

James and Christina also testified about the behaviors they typically observe from people they have caught trying to steal from their store, including lingering in the non-food aisles until they are clear of other customers, looking around at other customers rather than purposely shopping, putting items in bags, and hovering around the front of the store. Both testified that they observed Norvell exhibiting all of these behaviors. Surveillance video from inside the Grocery Outlet was also admitted into evidence, which allowed the jury to observe Norvell's behavior themselves. Finally, Norvell became hostile when he was asked to open his bag, something both testified to and shown on surveillance video. When taken together, this evidence was sufficient for a jury to conclude beyond a reasonable doubt that Norvell had stolen an item from inside the Grocery Outlet.

Norvell nevertheless contends that the evidence was not sufficient because the Gochmanskys mistakenly identified the large item as an easel rather than a car window shade. We will not reassess credibility of the witnesses; this is a function of the jury. State v. Hecht, 179 Wn. App. 497, 511, 319 P.3d 836 (2014). Norvell also asserts that the evidence is not sufficient because the

photograph admitted into evidence depicts him holding the pens rather than putting them into his bag and the Gochmanskys did not have eyes on him at all times while he was in the store. Direct evidence is not required to sustain a conviction; circumstantial evidence and direct evidence are considered equally reliable on appellate review. Thomas, 150 Wn.2d at 874. The circumstantial evidence presented here was sufficient for a jury to find beyond a reasonable doubt that Norvell had committed robbery in the second degree.

Community Custody

Norvell asserts that the trial court erred by ordering him to obtain an anger management assessment as a condition of his community custody. This condition, he contends, is not crime related and thus cannot be legally imposed. We disagree.

A crime-related prohibition "prohibit[s] conduct that directly relates to the circumstances of the crime for which the offender has been convicted." RCW 9.94A.030(10). A " 'reasonable relationship' " must exist between the crime of conviction and the community custody condition. State v. Nguyen, 191 Wn.2d 671, 684, 425 P.3d 847 (2018) (quoting State v. Irwin, 191 Wn. App. 644, 658-59, 364 P 3d 830 (2015)). The prohibited conduct need not be identical but must have some basis for the connection to the crime of conviction. Nguyen, 191 Wn.2d at 684.

We review a trial court's imposition of crime-related conditions for abuse of discretion. Irwin, 191 Wn. App. at 656. A trial court abuses its discretion if its

decision is manifestly unreasonable or based on untenable grounds. State v. Sassen Van Elsloo, 191 Wn.2d 798, 807, 425 P.3d 807 (2018).

As an initial matter, the State asserts that we should not address Norvell's challenge to his community custody conditions because he did not object below.[3] But "Washington courts . . . will consider some sentencing errors that are raised for the first time on appeal, including some claims challenging conditions of community custody." State v. Casimiro, 8 Wn. App. 2d 245, 249, 438 P.3d 137 (2019). Therefore, we review the merits of Norvell's challenge.

Here, the court ordered that Norvell obtain an anger management evaluation as a condition of his community custody. The trial court ordered this condition because when asked to open his bag, Norwell pushed James out of his way, and then once outside, swung the bag, laden with items, at James multiple times. This response, the trial court explained, was "out of line" and was indicative "that there is an issue that, you know, could be helpful to look at." As the trial court correctly noted, these facts establish a proper basis to connect the condition to the crime. We hold that the court did not abuse its discretion.

<u>Victim Penalty Assessment</u>

Finally, Norvell asserts that the victim penalty assessment (VPA) should be stricken from his judgment and sentence under RCW 7.68.035 because the trial court found him to be indigent. The State agrees that RCW 7.68.035 applies and concedes error as to the imposition of the VPA. The amended version of

---

[3] The State alternatively posits that Norvell invited the error but it provides no support for this assertion.

RCW 7.68.035 applies to cases on direct appeal. <u>State v. Ellis</u>, 27 Wn. App. 2d 1, 16, 530 P.3d 1048 (2023). We remand for the trial court to strike the VPA from Norvell's judgment and sentence.

Because Norvell has failed to establish any error, we affirm his conviction. But we remand for the trial court to strike the VPA from the judgment and sentence.

*Smith, C.J.*

WE CONCUR:

*Feldman, J.*          *Colburn, J.*