# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION  II

| | |
|---|---|
| In re the Matter of the Personal Restraint Petition of<br><br>JESSUP BERNARD TILLMON,<br><br>      Petitioner. | No.  47094-2-II<br><br><br><br>UNPUBLISHED OPINION |

JOHANSON, J.  —  A jury found Jessup Bernard Tillmon guilty of one count of first degree burglary, three counts of first degree kidnapping, and four counts of first degree robbery.  Tillmon appealed and we affirmed the burglary, kidnapping, and one of the robbery convictions, reversed the other three robbery convictions, and remanded to the trial court for resentencing.

Tillmon now files this personal restraint petition (PRP).  Tillmon argues that (1) he was denied a fair trial because of the prosecution's use of inflammatory Microsoft PowerPoint slides, (2) both trial and appellate counsel rendered ineffective assistance, and (3) there is insufficient evidence to support Tillmon's kidnapping convictions.  We hold that even though the State's PowerPoint slides unfairly suggested guilt and it was improper for the State to use them, Tillmon cannot establish that the use of the slides resulted in a substantial likelihood that the misconduct affected the verdict.  We further hold that Tillmon fails to show ineffective assistance of trial or

appellate counsel. Finally, we hold that sufficient evidence supports Tillmon's kidnapping convictions. Thus, we deny his PRP.

FACTS[1]

The trial testimony established the following salient facts. On December 27, 2009, Tillmon and two cohorts forcibly entered and then burglarized the Thurston County home of Zachary Dodge, Nicholas Oatfield, and Nick and Aaron Ormrod. All four young men were home at the time of the incident as were Dodge's girlfriend, Brittany Burgess, and two close friends, Casey Jones and Malcolm Moore. In the course of the break-in, the armed intruders forced everyone present to gather in the dining room on their stomachs while they ransacked other parts of the home for valuables.

Although the robbers stole property from many of the rooms in the home, only Dodge was robbed prior to being forced into the dining room. One of the intruders took Dodge's laptop and the money in his wallet before escorting him and Burgess to the dining room at gunpoint. Oatfield and both Ormrods were unaware that the intruders stole cash from their wallets until after the suspects fled the scene. The television from Nick Ormrod's bedroom was also stolen. Police officers arrested Tillmon shortly after the robberies when Tillmon called to turn himself in, admitting that he had been involved in the crimes along with three of his friends.

The State charged Tillmon with (1) first degree burglary, (2) first degree kidnapping of Moore, (3) first degree kidnapping of Jones, (4) first degree kidnapping of Burgess, (5) first degree

---

[1] The background facts are taken largely from this court's unpublished opinion following Tillmon's direct appeal, which was consolidated with the appeal of one of his codefendants. *See* *State v. Burns*, noted at 167 Wn. App. 1032 (2012).

robbery of Dodge, (6) first degree robbery of Oatfield, (7) first degree robbery of Aaron Ormrod, and (8) first degree robbery of Nick Ormrod.[2]  *State v. Burns*, noted at 167 Wn. App. 1032, 2012 WL 1203822, at *2.  Several of the victims testified, recalling events on the night of the incident. Thurston County Deputy Sheriff Rod Ditrich, who was the first officer at the scene, also recounted his arrival at the scene and his subsequent arrest of Tillmon.

Oatfield, who was attempting to call 911 from his bedroom when the intruders forced him out at gunpoint, identified Tillmon as one of the men present on the night of the crime.  Oatfield also knew what Tillmon looked like because Tillmon had been to the home with one of the housemate's other friends a couple of weeks before the break-in.  Dodge also identified Tillmon as one of the intruders based on his clothing on the night of the crime.

Deputy Ditrich was first to arrive at the scene with his K-9 partner.  Deputy Ditrich saw two people that he believed to be suspects fleeing from a nearby car.  Despite Deputy Ditrich's initial inability to apprehend either person, one of the suspects called police to turn himself in shortly thereafter.  Deputy Ditrich responded and arrested a man who identified himself as Tillmon and who confessed to having been part of the earlier robbery.

The "to convict" robbery instructions for all four robbery counts stated in part,

> To convict the defendant . . . of the crime of robbery in the first degree, . . . each of the following six elements of the crime must be proved beyond a reasonable doubt:
> (1) That on or about December 27, 2009, the defendant or an accomplice unlawfully took personal property *from the person of another,* [victim's name].

PRP, App. at 39, 42, 45, 48 (emphasis added).

---

[2] RCW 9A.52.020(1); RCW 9A.40.020; RCW 9A.56.200(1).

The "to convict instruction" for the kidnapping counts read as follows:[3]

> To convict the defendant . . . of the crime of kidnapping in the first degree . . . each of the following three elements of the crime must be proved beyond a reasonable doubt:
> (1) That on or about December 27, 2009, the defendant or an accomplice intentionally abducted [victim's name],
> (2) That the defendant or an accomplice abducted that person with intent to facilitate the commission of Robbery in the First Degree or flight thereafter.

PRP, App. at 26, 29, 32.

During its closing argument, the State employed the use of a PowerPoint presentation as a visual aid. From the record it appears that at least some of the slides that comprised the presentation accompanied the State's discussion of the evidence that, in its view, established Tillmon's guilt. One slide featured what appears to be Tillmon's booking photograph. Superimposed over the image of Tillmon's face are several phrases that appear to refer to various pieces of evidence, such as "PURCHASED SHOTGUN," "IDENTIFIED BY NICHOLAS OATFIELD," "SEEN RUNNING & IDENTIFIED BY DEPUTY DETRICH [sic]," and "ADMITTED ROBBERY." Resp. to PRP, App. H at 1. A "plus" symbol accompanies each of these phrases in a list organized vertically over Tillmon's photo. At the bottom of this list an "equals" symbol and the world "GUILTY" appears in red text over Tillmon's chin and lower jaw. Resp. to PRP, App. H at 1. Another slide features the same booking photograph of Tillmon with the booking photographs of his two codefendants arranged side-by-side. Underneath the images appears the text "= PARTNERSHIP IN CRIME." Resp. to PRP, App. H at 2.

---

[3] The trial court provided a separate "to convict" kidnapping instruction for three kidnapping victims, including Jones, Moore, and Burgess.

The jury found Tillmon guilty of all counts with firearm enhancements. Tillmon appealed, alleging that the trial court erred in several ways. We affirmed in part and reversed in part, ruling that insufficient evidence supported three of Tillmon's four robbery convictions. *Burns*, 2012 WL 1203822, at *1. We so held because the trial court gave an incomplete instruction to the jury without objection and, therefore, it became the "law of the case."[4] The jury instructions were incomplete in that they instructed the jury that it could find Tillmon guilty of robbery if the State proved that he took property only "'from the person of another'" rather than "'from the person of another'" *or* "'in the presence of another'" as the relevant Washington Pattern Jury Instruction provides. *Burns*, 2012 WL 1203822, at *3 (quoting 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 37.02, at 667 (3d ed. 2008)).

And because the State's evidence proved that Tillmon or his accomplices had taken property *from the person* of only one resident, we reversed his other three robbery convictions and remanded for resentencing. *Burns*, 2012 WL 1203822, at *4. Tillmon again appealed following resentencing, arguing that the trial court incorrectly calculated his offender score, but we affirmed his new sentence. Tillmon now files this timely PRP.

## ANALYSIS

### I. PRP STANDARD OF REVIEW

A PRP is not a substitute for a direct appeal and the availability of collateral relief is limited. *In re Pers. Restraint of Grasso*, 151 Wn.2d 1, 10, 84 P.3d 859 (2004). To be entitled to relief, the petitioner must show either a constitutional error that resulted in actual and substantial prejudice

---

[4] Under the "law of the case" doctrine, jury instructions not objected to become the law of the case. *State v. Hames*, 74 Wn.2d 721, 725, 446 P.2d 344 (1968).

or a nonconstitutional error that constituted a fundamental defect that inherently results in a complete miscarriage of justice. *In re Cook*, 114 Wn.2d 802, 812, 792 P.2d 506 (1990); *Grasso*, 151 Wn.2d at 10. A personal restraint petitioner must identify facts and admissible evidence that would entitle him or her to relief. RAP 16.7(a)(2).

We review a PRP claim of prosecutorial misconduct in the same manner as we review it on a defendant's direct appeal. *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 704, 286 P.3d 673 (2012) (citing *State v. Thorgerson*, 172 Wn.2d 438, 442, 258 P.3d 43 (2011)). And if a personal restraint petitioner makes a successful ineffective assistance of counsel claim, he has necessarily met his burden to show actual and substantial prejudice. *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 846-47, 280 P.3d 1102 (2012).

## II. PROSECUTORIAL MISCONDUCT

Tillmon argues for the first time in this PRP that the State's use of two PowerPoint slides deprived him of his right to a fair trial and constituted prosecutorial misconduct. Tillmon contends that the slides used in his case are "virtually indistinguishable" from those deemed improper and prejudicial by our Supreme Court in *Glasmann*. PRP at 6. Because Tillmon cannot show a substantial likelihood that the State's use of the two PowerPoint slides affected the jury's verdict, we reject his argument.

### A. LEGAL PRINCIPLES

The Sixth and Fourth Amendments to the United States Constitution and article I, section 22 of the Washington State Constitution grant the right to a fair trial. *Glasmann*, 175 Wn.2d at 703. Prosecutorial misconduct jeopardizes that right. *Glasmann*, 175 Wn.2d at 703-04. "A '[f]air trial certainly implies a trial in which the attorney representing the state does not throw the prestige

6

of his public office . . . and the expression of his own belief of guilt into the scales against the accused.'" *Glasmann*, 175 Wn.2d at 704 (internal quotation marks omitted) (alterations in original) (quoting *State v. Monday*, 171 Wn.2d 667, 677, 257 P.3d 551 (2011)).  A prosecutor may use graphics in closing argument and has "wide latitude to argue reasonable inferences from the evidence," but those visual aids cannot deprive a defendant of the constitutional right to a fair trial. *State v. Hecht*, 179 Wn. App. 497, 503, 319 P.3d 836 (2014).

In the context of a prosecutorial misconduct claim, our courts apply the direct review standard even to PRPs.  *Glasmann*, 175 Wn.2d at 704.  A defendant claiming prosecutorial misconduct must show both improper conduct and resulting prejudice.  *Glasmann*, 175 Wn.2d at 704.  Prejudice exists when there is a substantial likelihood that the misconduct affected the verdict.  *Glasmann*, 175 Wn.2d at 704 (citing *Thorgerson*, 172 Wn.2d at 442).

Tillmon did not object at trial to the prosecutor's allegedly improper conduct.  When the defendant fails to object to the challenged portions of the prosecutor's argument, he is deemed to have waived any error unless the prosecutor's misconduct was "'so flagrant and ill intentioned'" to be incurable by a jury instruction. *Thorgerson*, 172 Wn.2d at  443 (quoting *State v. Russell*, 125 Wn.2d 24, 86, 882 P.2d 747 (1994)).

To avoid waiver, Tillmon must show that "(1) 'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.'" *State v. Emery*, 174 Wn.2d 741, 761, 278 P.3d 653 (2012) (quoting *Thorgerson*, 172 Wn.2d at 455).  In analyzing a prosecutorial misconduct claim, we "focus less on whether the prosecutor's misconduct was flagrant or ill intentioned and more on whether the resulting prejudice could have been cured." *Emery*, 174 Wn.2d at 762.  "'The

criterion always is, has such a feeling of prejudice been engendered or located in the minds of the jury as to prevent a [defendant] from having a fair trial?'" *Emery*, 174 Wn.2d at 762 (alteration in original) (quoting *Slattery v. City of Seattle*, 169 Wash. 144, 148, 13 P.2d 464 (1932)).

## B. IMPROPER CONDUCT

Tillmon asserts that *Glasmann* is analogous and therefore it should control the outcome here. In *Glasmann*, the prosecutor used at least five PowerPoint slides that included Glasmann's unadmitted booking photograph where he is "unkempt and bloody" with captions in capital letters such as "'WHY SHOULD YOU BELIEVE ANYTHING HE SAYS ABOUT THE ASSAULT?'" and three slides with the word "'GUILTY'" in red letters over Glasmann's face. 175 Wn.2d at 701-02, 705. Our Supreme Court explained that these slides were calculated to influence the jury's assessment of Glasmann's guilt and the veracity of his trial testimony. *Glasmann*, 175 Wn.2d at 705. Plus, the slides expressed the prosecutor's personal opinion of Glasmann's guilt and the prejudicial effect of their use, combined with other instances of prosecutorial misconduct, "permeated" the State's closing argument. *Glasmann*, 175 Wn.2d at 705-07.

The *Glasmann* court noted that our courts have repeatedly denounced the conduct that occurred there because it is error to submit evidence to the jury that had not been admitted and in that instance, the prosecutor had intentionally done so by presenting to the jury copies of Glasmann's booking photo "altered by the addition of phrases calculated to influence the jury's assessment of Glassmann's guilt." 175 Wn.2d at 705. The court noted that "there [was] no sequence of photographs in evidence with 'GUILTY' on the face or 'GUILTY, GUILTY, GUILTY.' . . . Yet this 'evidence' was made a part of the trial by the prosecutor during closing argument." *Glasmann*, 175 Wn.2d at 706. The closing argument constituted flagrant and ill-

intentioned misconduct, which could not have been cured by an instruction. *Glasmann*, 175 Wn.2d at 707.

Other divisions of this court have also rebuked the use of these kinds of visual aids. In *Hecht*, the prosecutor used a slide displaying the charges against the defendant and "GUILTY" printed in red letters across the defendant's license photo in two slides. 179 Wn. App. at 502. Division One explained that

> [t]he slides of Hecht's photograph with a large red "GUILTY" printed across his face were at odds with the prosecutor's duty to ensure a fair trial. No legitimate purpose is served by a prosecutor showing the jury a defendant's photograph with the word "GUILTY" superimposed over his face. Such images are the graphic equivalent of shouting "GUILTY." . . .
> . . . .
> Moreover, the prejudicial impact of the word "GUILTY" was magnified by the fact it was written in capital letters, in red, and on a diagonal, obvious graphic devices for drawing the eye, implying urgency of action, and evoking emotion. This manipulation unfairly injected inflammatory extrinsic considerations into the argument.

*Hecht*, 179 Wn. App. at 505 (footnotes omitted) (citing *Glasmann*, 175 Wn.2d at 709).

We have recently held that a prosecutor's statement that the defendant was "'guilty, guilty, guilty,'" while flashing a slide that contained the word "'GUILTY'" in red capital letters with the heading "'Murder 2'" was an improper expression of personal opinion using unadmitted evidence. *State v. Fedoruk*, 184 Wn. App. 866, 889-90, 339 P.3d 233 (2014). There, the prosecutor's assertion of guilt came after a discussion of the defendant's virtues, without reference to any relevant evidence. *Fedoruk*, 184 Wn. App. at 890.

Here, as mentioned, one of the challenged slides featured what appears to be Tillmon's booking photograph. Superimposed over the image of Tillmon's face are several phrases that appear to refer to various pieces of evidence, such as "PURCHASED SHOTGUN," "IDENTIFIED

BY NICHOLAS OATFIELD," "SEEN RUNNING & IDENTIFIED BY DEPUTY DETRICH [sic]," and "ADMITTED ROBBERY." Resp. to PRP, App. H at 1. A "plus" symbol accompanies each of these phrases in a list organized vertically over Tillmon's photo. At the bottom of this list an "equals" symbol and the world "GUILTY" appears in red text over Tillmon's chin and lower jaw. Resp. to PRP, App. H at 1. Another slide features the same booking photograph of Tillmon with the booking photographs of his two codefendants arranged side-by-side. Underneath the images appears the text "= PARTNERSHIP IN CRIME." Resp. to PRP, App. H at 2.

Although these slides were less egregious than those in *Glasmann*, *Fedoruk*, and arguably *Hecht*, the State's use of these slides was improper. This is so even if Tillmon's booking photo itself was admitted into evidence because, as in *Glasmann*, the trial court here admitted no evidence that depicted Tillmon's booking photo with the word "guilty" over part of his face. It was improper to present Tillmon's photo "altered by the addition of phrases calculated to influence the jury's assessment of [his] guilt." *Glasmann*, 175 Wn.2d at 705. As our Supreme Court explained, "[T]he prosecutor's modification of photographs by adding captions was the equivalent of unadmitted evidence . . . made part of the trial by the prosecutor during closing argument." *Glasmann*, 175 Wn.2d at 706. Accordingly, the PowerPoint slides unfairly suggested to the jury that Tillmon was guilty.

Also, the prosecutor at least arguably expressed an improper, personal opinion of Tillmon's guilt by using the second challenged slide even if we acknowledge that the slides here were less inflammatory than those in *Glasmann* and its progeny in part because the word "GUILTY" here was in smaller font and was linked with various pieces of evidence. That slide, featuring the

booking photographs of Tillmon and two codefendants and the text "= PARTNERSHIP IN CRIME," included no reference to any piece of evidence. Resp. to PRP, App. H at 2.

## C. PREJUDICE

But we disagree with Tillmon that the prosecutor's improper use of these slides requires reversal of his convictions. This case is distinguishable from *Glasmann* for several reasons. First, unlike *Glasmann*, Tillmon's booking photograph does not depict him in a bloody and unkempt manner, "a condition likely to have resulted in even greater impact because of captions that challenged the jury to question the truthfulness of [Glasmann's] testimony." 175 Wn.2d at 705. Second, unlike *Glasmann*, Tillmon's credibility was not directly at issue because he did not testify at trial and none of the prosecutor's slides commented on Tillmon's credibility.

Third, the slides did not baldly assert that Tillmon was "GUILTY" without reference to the evidence. Instead, the prosecutor linked the "GUILTY" statement with various pieces of evidence presented during the trial. Significantly, one of those pieces of evidence to which the prosecutor referred was Tillmon's own admission of involvement in the robbery on the very morning of the crimes. Finally, Tillmon admitted that he and three friends had committed the crimes, rendering any prejudicial effect of the "partnership in crime" slide less so because the jury knew from his confession that Tillmon had partnered with others.

Crucial to our Supreme Court's decision in *Glasmann* was the fact that the 50-plus slide PowerPoint presentation that was "full of imagery that likely inflamed the jury" and the several other repetitive instances of misconduct, cumulatively caused prejudice sufficient to warrant reversal. 175 Wn.2d at 709. But here, of the 57-slide PowerPoint presentation, only the two slides

11

discussed above were improper as they pertained to Tillmon. Tillmon does not contend that the prosecution committed misconduct in any other form.

At least two of the victims present inside the house on the night of the crime identified Tillmon as one of the intruders. Oatfield specifically recognized Tillmon in part because he had seen Tillmon at his home two weeks prior to the break-in. Tillmon called police, confessed to being involved in the robbery, and turned himself in less than two hours after the crimes were committed. Accordingly, we hold that the improper use of these slides did not result in prejudice that had a "substantial likelihood [of] affect[ing] the jury's verdict" warranting a new trial. *Glasmann*, 175 Wn.2d at 711. Nothing here rises to the level of the misconduct found in *Glasmann.*

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Tillmon argues that he received ineffective assistance of counsel at both the trial and appellate level for trial counsel's failure to object to the State's use of the aforementioned slides and for appellate counsel's failure to raise the issues as part of his direct appeal. We disagree because Tillmon fails to show the requisite prejudice.

If a personal restraint petitioner makes a successful ineffective assistance of counsel claim, he has necessarily met his burden to show actual and substantial prejudice. *Crace*, 174 Wn.2d at 846-47. To prevail on an ineffective assistance of counsel claim, a defendant must show both deficient performance and resulting prejudice; failure to show either prong defeats this claim. *Strickland v. Washington*, 466 U.S. 668, 700, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To establish prejudice, a defendant must show that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694.

Here, even if both trial and appellate counsels' performance were deficient, Tillmon cannot establish that he was prejudiced by counsel's failure to object for essentially the same reasons that his prosecutorial misconduct claim fails as discussed above. The PowerPoint slides were significantly less egregious than those involved in the cases Tillmon cites and the evidence against him was particularly strong because he confessed to his involvement in the crime on his own initiative almost immediately.

Also, as explained above, at least two of the victims present inside the house on the night of the crime identified Tillmon as one of the intruders. And one victim specifically recognized Tillmon from having met him prior to the night of the crime. Tillmon has not shown that the result of the proceeding would have been different but for counsel's alleged error. *Strickland*, 466 U.S. at 694. We hold that Tillmon's ineffective assistance of counsel claims fail because he cannot satisfy the prejudice prong of *Strickland*.

IV. INSUFFICIENT EVIDENCE OF KIDNAPPING

Tillmon next contends that insufficient evidence supports his convictions for kidnapping because Tillmon's guilt for kidnapping depended on the State's ability to prove that he committed robbery as the jury was instructed. Specifically, Tillmon argues that because we reversed some of his robbery convictions, so too must his kidnapping convictions be reversed. We disagree.

To determine whether evidence is sufficient to sustain a conviction, we review the evidence in the light most favorable to the State. *State v. Wentz*, 149 Wn.2d 342, 347, 68 P.3d 282 (2003). The question is "'whether any rational fact finder could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Drum*, 168 Wn.2d 23, 34-35, 225 P.3d 237 (2010) (quoting *Wentz*, 149 Wn.2d at 347). In claiming insufficient evidence, the defendant necessarily

admits the truth of the State's evidence and all reasonable inferences that can be drawn from it. *Drum*, 168 Wn.2d at 35 (citing *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)). We interpret the evidence "'most strongly against the defendant.'" *State v. Hernandez*, 172 Wn. App. 537, 543, 290 P.3d 1052 (2012) (internal quotation marks omitted) (quoting *State v. Joy*, 121 Wn.2d 333, 339, 851 P.2d 654 (1993)).

On direct appeal, we reversed three of Tillmon's four robbery convictions based on the law of the case doctrine because the trial court gave an incomplete "to convict" instruction requiring that the jury find that Tillmon took property from the "person of another." *Burns*, 2012 WL 1203822, at *3-4. We held that based on this instruction, three of the robberies were not completed. Tillmon now asserts that the evidence was insufficient to support his kidnapping convictions because those convictions required proof of completed robberies. Tillmon's argument is unavailing for two reasons.

First, the "to convict" instruction for the kidnapping charges does not require proof of completed robbery. Instead, that instruction informed the jury that to convict, they must find that Tillmon committed the kidnappings *intending* to facilitate the commission of a robbery or flight thereafter. Tillmon offers neither argument nor citation to authority to suggest there was insufficient evidence of Tillmon's *intent* to commit robbery, whether or not he actually committed a completed robbery.

Second, we reversed only three of Tillmon's four convictions for robbery. Even were Tillmon correct that the kidnapping convictions depended on proof of completed robberies, the State proved that Tillmon did commit at least one robbery despite the incomplete instruction. We hold that Tillmon has failed to establish that insufficient evidence supports his convictions for

14

No. 47094-2-II

kidnapping. Accordingly Tillmon fails to show actual and substantial prejudice. We deny Tillmon's PRP.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, J.

We concur:

WORSWICK, J.

MAXA, A.C.J.